FILED
2021 FEB 25 AM 9:34
CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION, | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR DEPOSIT OF DEATH BENEFITS |
| Plaintiff, | |
| v. | Case No. 2:18-cv-00540-JNP-CMR |
| JULIE BRINKLEY, TRACIE MCLAUGHLIN, DAVID LIDDIARD, and ROBERT LIDDIARD, | District Judge Jill N. Parrish |
| Defendants. | Magistrate Judge Cecilia M. Romero |

Before the court are competing motions for deposit of death benefits in this interpleader action. Plaintiff New York Life Insurance and Annuity Corporation moves for an order approving a deposit of funds with the court in an amount to be calculated at a future date as the full remaining amount due under the death benefit provisions of five annuities purchased by decedent Diane Liddiard. New York Life also requests an order dismissing it from the lawsuit upon deposit of the funds and an award of attorney fees.

Defendants Julie Brinkley, Tracie McLaughlin, David Liddiard, and Robert Liddiard, Jr. (collectively, the defendants) disagree as to the remaining amount owed under the death benefit provisions of the annuities. They move for a court order requiring New York Life to deposit with the court the amount they calculate as being owed under the death benefit provisions and Utah law.

The court GRANTS IN PART and DENIES IN PART New York Life's motion for an order to deposit of funds. ECF No. 58. The court grants its request for an order to deposit the amount

that it calculates to be owed. But because disputes remain as to the actual amount owed, the court denies New York Life's requests for a discharge of liability and for attorney fees at this time. The court DENIES the defendants' cross-motion for an order compelling New York Life to deposit the amount that the defendants calculate to be due. ECF No. 64.

## BACKGROUND

Diane Liddiard purchased five annuities from New York Life. She purchased two variable annuities (Variable Annuities A and B) and three fixed annuities (Fixed Annuities C, D, and E). Diane's husband, Robert Liddiard, Sr. (Robert, Sr.), was named as the primary beneficiary of the annuity death benefit and her four children; Julie Brinkley, Tracie McLaughlin, David Liddiard, and Robert Liddiard, Jr. (Robert, Jr.); were named as coequal secondary beneficiaries. Diane and Robert, Sr. were killed on November 4, 2017. The medical examiner determined that they died from sharp force injuries and that their deaths were homicides.

Robert, Jr. was criminally charged in connection with his parents' deaths. The court presiding over the criminal case found that Robert, Jr. suffered from a mental illness that prevented him from understanding the charges against him and from participating in his defense. Therefore, he was committed to a mental hospital.

Because Diane and Robert Sr. passed away at the same time, New York Life decided that the annuity death benefits were owed to the four children as the secondary beneficiaries. New York Life also determined that Robert, Jr. may have been disqualified from receiving his share of the death benefits under Utah's slayer statute. *See* Utah Code § 75-2-803. Accordingly, New York life paid a quarter share of the death benefits to each of the other children named as beneficiaries: Julie, Tracie, and David. But it did not pay out Robert, Jr.'s quarter share of the benefits. Instead, New York Life commenced this interpleader action, naming the four siblings as defendants. It

2

seeks to deposit the remaining quarter share with the court so that the siblings can litigate the issue of how the money should be allocated.

New York Life filed a motion for deposit of death benefits with the court. The defendants requested a number of extensions of time to file a response brief, representing that the parties were negotiating the proper amount to be deposited with the court. Eventually, the court denied the motion without prejudice to file a new motion to deposit funds in the event that the parties could not come to an agreement. New York Life subsequently filed a second motion for deposit of death benefits. The defendants oppose the motion. They argue that the funds that New York Life proposes to deposit with the court are not properly calculated. They also argue that Utah Code § 31A-22-428(4) requires New York Life to pay additional interest on the amount it proposes to deposit. The defendants filed a cross-motion for deposit of death benefits, requesting a court order requiring New York Life to deposit a larger amount of money with the court.

## ANALYSIS

## I.   NEW YORK LIFE'S MOTION FOR DEPOSIT OF DEATH BENEFITS

New York Life seeks three principal forms of relief. First, it requests an order from the court to deposit the death benefit funds with the court. Second, New York Life moves the court to discharge it from liability and to dismiss it from this action with prejudice. Third, it seeks an award of attorney fees.

### A.   *Request for an Order to Deposit Funds*

In order to deposit money with the court, "[t]he depositing party must deliver to the clerk a copy of the order permitting deposit." FED. R. CIV. P. 67(a). New York Life moves for such an order. Because two of the annuities at issue are variable and fluctuate with the stock market, it does not provide a precise amount that it wishes to deposit with the court. Instead, New York Life

generally describes the funds that it wishes to deposit along with interest from the date of death for the fixed annuities. The defendants oppose the motion on three grounds.

        1)     Jurisdiction

The defendants first argue that this court would have jurisdiction over this action only if New York Life deposits the full amount claimed by them. The court disagrees.

There are two types of interpleader actions: statutory interpleader and rule interpleader. *Primerica Life Ins. Co. v. Montoya*, No. 1:18-CV-00109-JCH-CG, 2018 WL 3068059, at *2 (D.N.M. June 21, 2018). In a statutory interpleader action, the subject matter jurisdiction of the court is based upon 28 U.S.C. § 1335, which requires minimal diversity amongst the claimants (i.e., the defendants). *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967). A rule interpleader case is based upon Rule 22 of the Federal Rules of Civil Procedure. Because Rule 22 provides only a procedural framework for the case, a rule interpleader action "must be based upon the general jurisdiction statutes applicable to civil actions in the federal courts." *Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 704 (7th Cir. 2014) (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1710 (3d ed. 1998 & Supp. 2010)). Thus, a plaintiff in a rule interpleader action must satisfy the diversity requirements of 28 U.S.C. § 1332—i.e., complete diversity between the stakeholder plaintiff and the claimant defendants—or some other statute. *Id.*

In this case, the diversity requirements for both statutory and rule interpleader have been met. The diversity requirements of § 1335 have been satisfied because at least two of the defendants are citizens of diverse states and the amount at stake is $500 or more. The diversity requirements of § 1332 have also been satisfied because there is complete diversity between New York Life and the defendants and the amount at stake is over $75,000.

The defendants argue, however, that the court will not have jurisdiction over this action until an additional requirement is met. They point to caselaw from the First Circuit, which has interpreted § 1335 to preclude subject matter jurisdiction unless the plaintiff deposits the "largest amount in controversy" with the court. *See In re Sinking of M/V Ukola*, 806 F.2d 1, 5 (1st Cir. 1986). The defendants contend that under this interpretation of § 1335, the court will not have jurisdiction to preside over the case unless New York Life deposits with the court the full amount they claim to be at stake.

The court need not decide whether to follow authority from the First Circuit and other Circuits that have adopted the largest-amount-in-controversy interpretation of § 1335 because the court also has jurisdiction over this case under § 1332. The defendants argue that the court cannot assume jurisdiction over this case as a rule interpleader action because New York Life did not mention Rule 22 in its complaint. But New York Life did not need to cite Rule 22 as a basis for jurisdiction because Rule 22 does not confer jurisdiction in rule interpleader actions—§ 1332 does. Thus, New York Life properly invoked this court's jurisdiction by citing § 1332 in its complaint and alleging facts showing complete diversity of citizenship between New York Life and the defendants. *See Primerica Life*, 2018 WL 3068059, at *2 (ruling that a plaintiff need not cite Rule 22 in its complaint to properly plead diversity jurisdiction for a rule interpleader action).

In short, because the court has subject matter jurisdiction in this case under § 1332, the court need not address the defendants' argument regarding jurisdiction under § 1335.

2)      Variable Annuity A

The parties dispute the remaining amount due under Variable Annuity A. Diane purchased the annuity in 2011 with $1,285,000. She received two credits at the time of purchase worth $67,100, giving the annuity a total initial value of $1,352,100. The current value of Variable

Annuity A is calculated by adding the "Fixed Accumulation Value" of the annuity to the "Variable Accumulation Value" of the annuity. Thus, to an extent, the total value of this annuity fluctuates with the market.

Before Diane's death, she withdrew a total of $307,925 from Variable Annuity A. After her death, New York Life distributed a total of $855,221.14 to Julie, Tracie, and David for their quarter shares of the death benefit. New York Life represents that it cannot precisely calculate the amount that it proposes to deposit with the court for the remaining quarter share of this annuity because its value fluctuates with the market. But it states that as of March 9, 2020, the value of Variable Annuity A was $291,436.51.

The defendants argue that this amount is too low. They assert without citation that New York Life "reported annual returns on earnings made on policies under two reported amounts." The defendants then list two columns of different percentages for six-month periods between 2011, when Variable Annuity A was purchased, and 2017, when Diane passed away. From these columns of figures, they then calculate an average annual interest rate of 2.22%. Applying this average annual interest rate, and purportedly accounting for the various withdrawals and death benefit disbursements, the defendants calculate that the amount remaining in the account should have been $372,757.40 on February 21, 2018. The defendants concede, however, that these calculations are not precise, but represent "a conservative calculation of the likely earnings" of Variable Annuity A.

New York Life does not directly address the defendants' calculations. It states that the value of Variable Annuity A is governed by the terms of the contract that Diane signed. New York Life then asserts that the value of the annuity is variable and that it will properly calculate the value when it distributes the proceeds.

6

Because the evidence presented by the parties is in dispute, the court is not able to definitively determine the value of Variable Annuity A at this juncture. New York Life promises only to calculate the value when it deposits the money with the court. And the defendants do not state where they obtained the columns of percentages that they reproduce in their brief, properly explain what the figures represent, or cite any evidence to back up their calculations. They even concede that their calculations represent only a "likely" remaining value of the annuity. Thus, this dispute must be resolved at a later stage of the litigation.

3)      Utah Code § 31A-22-428(4)

The defendants also argue that they are entitled to interest under Utah Code § 31A-22-428(4), which provides:

> A court of competent jurisdiction may require payment of interest from the date of death to the day on which a claim is paid at a rate equal to the sum of:
>
> (a) the rate specified in Subsection (2); and
>
> (b) the legal rate identified in Subsection 15-1-1(2)

The rate specified in Subsection (2) is the "Two Year Treasury Constant Maturity Rate as published by the Federal Reserve," which the defendants assert to be 2.13% per annum. The interest rate identified in Utah Code § 15-1-1(2) is 10% per annum. Thus, the defendants argue that the court should require New York Life to pay a total of 12.13% in annual interest from the date of Diane's death until the date when New York Life deposits the death benefit with this court.

But this provision does not require a court to award interest at this rate. The Utah Legislature's use of the term "may" indicates that courts have discretion in such matters. *See Bilanzich v. Lonetti*, 160 P.3d 1041, 1046 (Utah 2007) (statute providing that a court "may" award attorney fees was discretionary). Because the statute provides no guidance on how this discretion

7

should be exercised, the court looks "to the policies underlying the statute in exercising this discretion." *Id.* The clear purpose for permitting courts to order life insurance companies to pay interest at such an exorbitant rate is to encourage the prompt payment of death benefits. Thus, without a valid excuse for a speedy payment, an award of interest under § 31A-22-428(4) would normally be warranted.

New York Life argues that the court should not order it to pay interest at the rate calculated in subsection (4) because it promptly filed this interpleader action after concluding its investigation. But the mere fact that it filed an interpleader action is not, in and of itself, sufficient to show that New York Life's delay in paying the remaining quarter share of the death benefits was reasonable. Rather, the key question is whether an investigation of Robert, Jr.'s potential responsibility for Diane's death would have yielded sufficient information to allow New York Life to reasonably ascertain whether Utah's slayer statute bars Robert, Jr. from receiving his share of the death benefits.

The parties, however, have provided the court with very little information regarding the circumstances of Diane's death. Nor have they analyzed the slayer statute or argued whether it applies here or not. Accordingly, the court is not able to determine whether New York Life's decision to initiate an interpleader action—rather than making its own determination regarding the proper beneficiary or beneficiaries—was reasonable. Thus, the court does not have enough information to decide whether to order New York Life to pay interest calculated pursuant to Subsection (4).[1]

---

[1] New York Life also argues that no interest should be assessed on the value of the variable annuities because those funds remain invested in the market until it deposits the money with the court. Although the court has not yet decided whether to order the payment of interest pursuant to

4) Conclusion

Unresolved disputes remain as to the amount that New York Life should deposit with the court. At oral argument on the motion to deposit funds, the parties agreed that New York Life should be given an opportunity to deposit the amount that it contends to be owed under the death benefit clauses of the annuity contracts. The parties also agreed that in order to efficiently resolve the dispute regarding the proper amount to be deposited with the court, the complaint should be amended to include a claim for declaratory relief.

Accordingly, the court grants the portion of New York Life's motion seeking an order to deposit funds with the court. New York Life shall have 10 days from the date of this order to file an amended complaint and to file a proposed order for deposit of funds. The defendants shall have 7 days to file any objection to the form of the proposed order.

B.    *Request for a Discharge of Liability*

New York Life argues that it should be discharged from further liability and dismissed from this case once it deposits funds with the court. "If the stakeholder is disinterested, he is entitled to dismissal." *Gen. Atomic Co. v. Duke Power Co.*, 553 F.2d 53, 56 (10th Cir. 1977). Here, however, questions remain as to the proper amount to be deposited with the court. Accordingly, New York Life's request for a discharge of liability is denied at this time.

---

Utah Code § 31A-22-428(4), the court notes its disagreement with New York Life's argument that no interest could be awarded for the variable annuities under this statute. The Utah Legislature clearly stated that a court may require the payment of interest from "the date of death to the day on which a claim is paid." Thus, the court could order New York Life to assess the value of the variable annuities on the date of death and award interest on that amount until the date that the payment is deposited with the court. Of course, the defendants could not claim both the benefit of interest calculated pursuant to subsection (4) and any returns on the variable annuities realized after the date of death. They would have to choose between the two amounts.

9

C.       *Request for an Award of Attorney Fees*

Finally, New York Life argues that it is entitled to its attorney fees for bringing this action. The Tenth Circuit has recognized "the common practice" of awarding attorney fees incurred by a stakeholder. *U. S. Fid. & Guar. Co. v. Sidwell*, 525 F.2d 472, 475 (10th Cir. 1975). But whether to award fees is left to the discretion of the court. *Travelers Indem. Co. v. Israel*, 354 F.2d 488, 490 (2d Cir. 1965). Because there are unresolved disputes regarding the proper amount to deposit with the court, the court defers to a later date a decision on the issue of whether to award attorney fees.

## II.   THE DEFENDANTS' CROSS-MOTION FOR DEPOSIT OF DEATH BENEFITS

The defendants filed a cross-motion for an order compelling New York Life to deposit funds with the court. Based upon their arguments regarding the remaining value of Variable Annuity A and interest pursuant to Utah Code § 31A-22-428(4), the defendants assert that the court should order New York Life to deposit $712,319.24 with the court together with per diem interest in the amount of $216.93.

The court denies the defendants' cross-motion because, as explained above, it does not have enough information to resolve the defendant's arguments regarding the remaining amount owed under the death benefit clauses of the annuities.

## CONCLUSION AND ORDER

For the above-stated reasons, the court ORDERS as follows:

1. The court GRANTS IN PART and DENIES IN PART New York Life's motion for deposit of death benefits. ECF No. 58. The court will enter a separate order permitting NEW York Life to deposit with the court the amount that it contends is owed under the annuity contracts. The court denies without prejudice New York Life's requests for a discharge of liability and for attorney fees. New York Life shall file an amended

10

complaint and a proposed order permitting the deposit of funds by March 8, 2021. The

defendants may file any objections to the proposed order by March 15, 2021.

2.  The court DENIES the defendants' cross-motion for an order compelling New York

    Life to deposit funds with the court in the amount demanded by the defendants. ECF

    No. 64.

Signed February 25, 2021.

BY THE COURT

Jill N. Parrish
United States District Court Judge