IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>JULIE BRINKLEY, TRACIE MCLAUGHLIN, DAVID LIDDIARD, and ROBERT LIDDIARD,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR VOLUNTARY DISMISSAL<br><br>Case No. 2:18-cv-00540-JNP-CMR<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Cecilia M. Romero |

Before the court is plaintiff New York Life Insurance and Annuity Corporation's motion to voluntarily dismiss this action pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. ECF No. 135. The court GRANTS the motion.

## BACKGROUND

Diane Liddiard purchased five annuities from New York Life. She purchased two variable annuities (Variable Annuities A and B) and three fixed annuities (Fixed Annuities C, D, and E). Diane's husband, Robert Liddiard, Sr. (Robert, Sr.), was named as the primary beneficiary of the annuity death benefit and her four children; Julie Brinkley, Tracie McLaughlin, David Liddiard, and Robert Liddiard, Jr. (Robert, Jr.); were named as coequal secondary beneficiaries.

Diane and Robert, Sr. were killed in November 2017. Robert, Jr. was criminally charged for his parents' deaths. The court presiding over the criminal case found that Robert, Jr. suffered from a mental illness that prevented him from understanding the charges against him and from participating in his defense. He was committed to a mental hospital.

Because Diane and Robert Sr. passed away at the same time, New York Life decided that the annuity death benefits were owed to the secondary beneficiaries. New York Life also determined that Robert, Jr. may have been disqualified from receiving his share of the death benefits under Utah's slayer statute. *See* UTAH CODE § 75-2-803. Accordingly, New York Life paid a quarter share of the death benefits to each of the other beneficiaries: Julie, Tracie, and David. But it did not pay out Robert, Jr.'s quarter share of the benefits. Instead, New York Life commenced this interpleader action, naming the four siblings as defendants. It sought to deposit the remaining quarter share with the court so that the siblings could litigate the issue of how the money should be allocated.

Soon after New York Life initiated this interpleader action, it filed a motion for deposit of death benefits with the court. Julie, Tracie, and David opposed the motion, arguing that the amount that New York Life proposed to deposit was insufficient. New York Life requested five extensions of time to file its reply brief, representing that the parties were negotiating the proper amount to be deposited with the court. After the fifth extension request, the court denied the motion to deposit funds without prejudice to file a new motion in the event that the parties could not come to an agreement.

While the parties were litigating the first motion to deposit funds, Julie, Tracie, and David answered New York Life's interpleader complaint. These defendants asserted a single crossclaim against Robert, Jr., arguing that the slayer statute precluded him from receiving his share of the death benefits. Robert, Jr., who was being held in a mental institution, did not respond to the interpleader complaint. The court subsequently appointed an attorney to represent Robert, Jr. in this litigation. Robert, Jr. then filed answers to both the interpleader complaint and the crossclaim asserted by Julie, Tracie, and David.

New York Life filed a second motion for deposit of death benefits. It also requested an order discharging it from all liability and dismissing it from this action. The defendants opposed the motion, arguing that the amount that New York Life proposed to deposit with the court was not sufficient. The defendants also filed a motion for an order requiring New York Life to deposit with the court the amount that they calculate as being owed under the death benefit provisions and Utah law. The court granted in part New York Life's motion. The court allowed it to deposit the amount that it asserted to be the remaining death benefit owed. But the court denied New York Life's request for a discharge of liability and denied the defendants' motion for an order requiring New York Life to deposit additional funds because the parties disputed the amount owed.

At the hearing on the cross-motions for deposit, the parties agreed that New York Life would be allowed to amend its interpleader complaint to add a claim for declaratory relief. New York Life filed an amended complaint adding a claim seeking a declaration from the court that it fully discharged its duties under the annuities contracts by depositing the remaining death benefit with the court. Robert, Jr. answered the amended complaint. Julie, Tracie, and David also filed a joint answer, which maintained their crossclaim against Robert, Jr. None of the defendants asserted a counterclaim against New York Life.

Defendants Julie, Tracie, and David subsequently settled their crossclaim against Robert, Jr. by executing an agreement detailing how the funds held by the court, as well as any additional money obtained from New York Life, would be divided among themselves. The defendants moved the court to approve the settlement agreement, and the court granted the motion. Twenty-eight days later, New York Life moved to dismiss this interpleader action pursuant to Rule 41(a)(2). The defendants opposed the motion to dismiss and filed a motion that they entitled

"Defendants' Cross-Motion for Summary Judgment for Statutory Interest on Annuities and Related Relief." New York Life then filed a motion for summary judgment in its favor as an alternative to dismissal.

## LEGAL STANDARD

Rule 41(a)(2) provides that if the conditions for voluntary dismissal outlined in subdivision (a)(1) do not apply:

> an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

This rule "is designed primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Mitchell v. Roberts*, 43 F.4th 1074, 1083 (10th Cir. 2022) (citation omitted). "Absent 'legal prejudice' to the defendant, the district court normally should grant such a dismissal." *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997). Relevant factors that a court should consider when determining whether legal prejudice precludes dismissal include "the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant; insufficient explanation of the need for a dismissal; and the present stage of litigation." *Id.* Courts may also consider other relevant factors. *Id.*

## ANALYSIS

### I.  PLEADING A COUNTERCLAIM

The defendants first note that the court may not dismiss an action under Rule 41(a)(2) if a defendant has "pleaded a counterclaim." Although none of the defendants pleaded a

4

counterclaim against New York Life, they argue that the court should nonetheless deny New York Life's motion for voluntary dismissal for two reasons.

  A.  *The Claim for Declaratory Relief*

  First, the defendants argue that the claim for declaratory relief found in New York Life's amended complaint excused them from the need to file counterclaims against New York Life. The defendants contend that "it was unnecessary for Defendants to file a redundant counterclaim for the same declaratory relief." But New York Life sought a narrow declaration that "it has fully discharged its duties under" the annuities contracts by depositing with the court the amounts that it contends it owes. ECF No. 86 at ¶¶ 46 & 52. Although the defendants could oppose such a declaration from the court, the declaratory relief claim pleaded by New York Life was not broad enough to encompass the relief sought by the defendants: a money judgment in their favor for an amount in excess of the funds deposited with the court. In order to raise the issue of New York Life's liability for additional amounts, the defendants needed to file a counterclaim. *See Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 264 (3d Cir. 2009) ("[W]here a claimant brings an independent counterclaim against the stakeholder, the stakeholder is kept in the litigation to defend against the counterclaim, rather than being dismissed after depositing the disputed funds with the court."); *Nationwide Mut. Ins. Co. v. Eckman*, 555 F. Supp. 775, 778 (D. Del. 1983) (ruling that dismissal of the stakeholder was not appropriate because the claimants asserted a counterclaim against the stakeholder for additional amounts allegedly owed).

  The defendants argue that the following language from *Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985) supports thier contention that a counterclaim is unnecessary:

> When the original complaint puts in play all of the factual and legal theories, it makes no difference whether another party calls its pleadings counterclaims, affirmative defenses, or anything else. The original complaint brought the dispute into court, and the parties to that complaint are parties to each aspect of the imbroglio.

But the defendants take this language out of context. In *Tenneco*, the plaintiff owed money to a steel processor for products it had purchased. *Id.* at 1377. The steel processor was in financial straits and had defaulted on payments it owed to a supplier of raw steel. *Id.* Unsure whether the money it owed should be paid to the steel processor, the supplier, or one of the steel processor's creditors, the plaintiff initiated an interpleader action, naming these three entities as defendants. *Id.* The plaintiff offered to pay a total of $418,431.19. *Id.* The complaint acknowledged that the supplier had asserted that the plaintiff owed it almost triple this amount. *Id.* Thus, the plaintiff asked for a declaratory judgment that its maximum liability was capped at the amount that it had offered to pay. *Id.* The supplier filed a counterclaim against the plaintiff, requesting a judgment against it for the higher amount. *Id.* Even though it was already a defendant in the interpleader action, the creditor filed a motion to intervene in the supplier's counterclaim against the plaintiff, arguing that the resolution of the counterclaim could affect its security interest and potentially determine whether the supplier or the creditor was entitled to the res. *Id.* The court denied the motion to intervene, and the creditor appealed. *Id.* at 1377–78.

The Seventh Circuit dismissed the appeal for want of jurisdiction. *Id.* at 1380. It reasoned that the counterclaim asserted by the supplier was an integral part of the interpleader action because it arose out of the same transaction. *Id.* at 1379. Thus, because the interpleader complaint raised the issue of which of the defendants was entitled to the res, the creditor was already entitled to participate in the counterclaim in order to protect its alleged security interest in the payment. *Id* at 1379–80. Accordingly, the motion to intervene in the counterclaim was

6

superfluous, and the creditor could not take an immediate appeal from the district court's denial of the motion. *Id.* at 1380.

In so holding, the Seventh Circuit broadly declared: "The original complaint brought the dispute into court, and the parties to that complaint are parties to each aspect of the imbroglio" *Id.* at 1379. This court, however, reads this language in the context of the particular dispute presented to the Seventh Circuit: whether a defendant in an interpleader action needs to intervene in a codefendant's counterclaim against the plaintiff in order to protect the defendant's claim to the res vis-à-vis a codefendant's competing claim to the res. Because the interpleader complaint was broad enough to encompass this dispute *between codefendants*, intervention was not required. But the Seventh Circuit's broad language is not persuasive authority for the proposition that a defendant in an interpleader action need not assert a counterclaim against the plaintiff in order to place at issue whether the court should enter a judgment against the plaintiff for an amount in excess of the sum deposited with the court. Indeed, in *Tenneco*, the defendant pleaded a counterclaim against the plaintiff for this very purpose despite the claim for declaratory relief asserted by the plaintiff, undercutting the argument pressed by the defendants in this action.

Pointing to remarks made by the court in its order granting in part New York Life's motion to deposit funds, the defendants also suggest that the parties had agreed during a hearing on the motion that New York Life's declaratory relief claim would be sufficient to resolve the defendants' assertions that additional funds were owed. But the adequacy of the defendants' pleadings was not an issue raised by the parties in that proceeding. Because that subject was not before the court, stray statements by the court do not memorialize binding concessions or agreements. In the end, the parties are responsible for setting the parameters of the litigation through their pleadings.

7

In sum, the court concludes that the claim for declaratory relief asserted by New York Life does not constitute a counterclaim pleaded by the defendants for the purposes of Rule 41(a)(2). Accordingly, this rule does not bar voluntary dismissal of the interpleader action.

B. *The Affirmative Defenses and Prayer for Relief*

Julie, Tracie, and David also argue that affirmative defenses pleaded in their answer should be deemed to be counterclaims under Rule 8(c)(2), which provides that "[i]f a party mistakenly designates . . . a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated." Specifically, they contend that the following affirmative defenses should be treated as counterclaims:

### THIRD DEFENSE

(Breach of Implied Covenant of Good Faith and Fair Dealing)

Part of the Company's claims should be denied because the Company has breached the covenant of good faith and fair dealing by failing to timely account for the proper earnings of the Annuities and interpleading those sums into Court.

### FOURTH DEFENSE

(Breach of Duties and Obligations)

Part of the Company's claims should be denied because the Company has breached its duties and obligations under the insurance policies and/or applicable Utah law.

### FIFTH DEFENSE

(Unclean Hands)

Part of the Company's claims should be denied because the Company has acted with unclean hands.

The court disagrees. "[A] request for relief that amounts to no more than denial of the plaintiff's demand is properly considered an answer, not a separate claim for affirmative relief

that expands the court's jurisdiction." *Akiachak Native Cmty. v. United States Dep't of Interior*, 827 F.3d 100, 107 (D.C. Cir. 2016). Julie, Tracie, and David prefaced each of these affirmative defenses with the phrase: "Part of the Company's claims should be denied because . . . ." Because they unmistakably designated their affirmative defenses as denials of the relief sought in New York Life's complaint, the court may not deem these defenses to be counterclaims under Rule 8(c)(2).

Julie, Tracie, and David also argue that a prayer for relief that they added to their answer should function as a counterclaim. But Rule 8(c)(2) provides no mechanism to do so. *Harper v. Lindon City*, No. 2:18-cv-00772-DAK, 2020 WL 472918, at *2 (D. Utah Jan. 29, 2020) ("[The defendant] now claims that its Prayer for Relief functions as a counterclaim. Given that Rule 8(c)(2) makes no mention of situations when a party mistakenly designates a counterclaim as a prayer for relief, the court is not persuaded that Rule 8(c)(2) supports [the defendant's] position."). Accordingly, the court does not construe the prayer for relief as a counterclaim. *See id.*

## II. LEGAL PREJUDICE

To determine whether legal prejudice to the defendants precludes voluntary dismissal, the court first considers "the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant; insufficient explanation of the need for a dismissal; and the present stage of litigation." *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997). None of these factors weigh against dismissal. The parties have not prepared for trial because a trial date has not been set. And New York Life did not delay filing a motion for dismissal; it moved for dismissal soon after the court approved the settlement agreement between the defendants. Moreover, New York Life adequately explained that it requested dismissal

because the settlement between the defendants negated the need for the interpleader action to continue. The final *Ohlander* factor also weighs in favor of dismissal. Although this litigation has been pending for a for a long time (mainly due to the time spent resolving the representation issue and on the defendants' oppositions to New York Life's motions to deposit funds with the court), the defendants have not pleaded counterclaims against New York Life. Indeed, the defendants have not even clearly articulated one of its theories advanced in its briefing—that New York Life shortchanged Dianne Liddiard by not paying enough interest for Variable Annuity A. It is unclear whether the defendants base this claim in tort, breach of contract, or breach of a fiduciary duty. Thus, the present stage of the litigation factor also favors dismissal.

The defendants do not argue that any of the *Ohlander* factors preclude voluntary dismissal. Instead, they contend that dismissal would cause an unacceptable level of legal prejudice for other reasons. First, they argue that dismissal would prejudice them because the statute or statutes of limitations applicable to their legal theories would likely bar a future action against New York Life. The defendants are not sure which limitations period or periods would apply to their legal theories, but suggest three likely candidates: (1) the three-year statue of limitations for written insurance policies under Utah Code § 31A-21-313(1)(a), (2) the four-year, catch-all statute of limitations under Utah Code § 78B-2-307, or (3) the six-year statute of limitations for breach of a written contract under Utah Code § 78B-2-309(1). The defendants argue that any of these limitations periods would likely preclude relief under any future lawsuit.

The court finds that the defendants' statute of limitations argument does not amount to legal prejudice. The defendants have not preserved any legal claims against New York Life by either filing a lawsuit or asserting a counterclaim in this action. Thus, voluntary dismissal will not place them in a worse position than they already occupy in relation to any hypothetical

10

statute of limitations defense. Moreover, the defendants have not shown that voluntary dismissal would actually prejudice any legal claim. As noted above, the defendants first contend that New York Life did not pay Diane Liddiard enough interest on Variable Annuity A. But Dianne purchased the annuity in November 2010. If New York Life had defrauded Diane by paying her less interest than she was owed, this wrongful conduct would have been obvious to her when she checked her account or the quarterly statements. Thus, even if the defendants had the ability to sue New York Life for allegedly wrongful conduct against Diane Liddiard, even the six-year statute of limitations referenced by the defendants would have run before New York Life initiated this action in July 2018. *See Doxey-Layton Co. v. Clark*, 548 P.2d 902, 906 (Utah 1976) ("a counterclaim which arises out of the transaction alleged in the complaint and is in existence, at the time the complaint is filed, *and is not then barred by a statute of limitations*, will not be barred by a running of the statutory time thereafter." (emphasis added)). Second, the defendants argue that the court should award additional interest on the annuity death benefit payments under Utah Code § 31A-22-428. But any statutory claim for interest could not accrue before New York Life deposited the death benefit funds with the court on March 25, 2021. Thus, the four-year, catch-all statute of limitations under Utah Code § 78B-2-307 has not run. Accordingly, the defendants have not demonstrated to the court that the voluntary dismissal of this action would prejudice any hypothetical legal claim against New York Life.

None of the other legal prejudice arguments raised by the defendants are persuasive. They argue that dismissal would result in redundant litigation. But the defendants have not yet pleaded any causes of action against New York Life and the court has not addressed any summary judgment arguments. To the extent that the parties have conducted discovery or briefed issues related to any potential claims, they need not replicate these efforts in any future litigation.

11

The defendants also note that some of the interpleaded funds have been disbursed to pay Robert, Jr.'s attorney and that dismissal would interfere with his counsel. But, as discussed below, the court retains jurisdiction to wrap up any issues related to final payments to Robert, Jr.'s appointed attorney and the disbursement of funds to the defendants. Finally, none of the defendants' other legal prejudice arguments are adequately explained or persuasive.

In sum, the court concludes that legal prejudice does not preclude voluntary dismissal. The court, therefore, grants New York Life's motion to dismiss. *See Ohlander*, 114 F.3d at 1537 ("Absent 'legal prejudice' to the defendant, the district court normally should grant such a dismissal.").

### III. CONDITIONS OF DISMISSAL

Rule 41(a)(2) permits the court to allow voluntary dismissal "on terms that the court considers proper." In this case, the court must perform the tasks of paying out money held by the court and discharging Robert Jr.'s attorney. The court delays dismissal until these tasks can be completed. To facilitate closing this case, the court orders the defendants to inform the court how it should pay out the remaining funds held by the court within 14 days of this order. After payment has been completed the court will discharge Robert Jr.'s attorney and dismiss this action without prejudice.

### CONCLUSION AND ORDER

For the forgoing reasons, the court rules as follows:

(1) The court GRANTS New York Life's motion for voluntary dismissal of this action. ECF No. 135. Dismissal shall be without prejudice.

(2) The court ORDERS the defendants to file a plan for disbursing the funds held by the court within 14 days of this order. Once the court disburses the funds, the court will discharge Robert Jr.'s attorney and close this case.

(3) The court finds that the defendants' motion for summary judgment, ECF No. 143, and New York Life's motion for summary judgment, ECF No. 148, are both MOOT.

Signed March 14, 2024.

                         BY THE COURT

                         _____
                         Jill N. Parrish
                         United States District Court Judge